1

2                    UNITED STATES DISTRICT COURT

3                    EASTERN DISTRICT OF WASHINGTON

4

5    RICHARD S. ROBBINS,

6        Plaintiff,                          NO. CV-05-00246-JLQ

7        vs.

8                                            MEMORANDUM OPINION AND
                                             ORDER **GRANTING**
9    BENTON COUNTY, YAKIMA COUNTY,           DEFENDANTS BENTON COUNTY,
     TIMOTHY DUNN, DAVID CLARK, and          TIMOTHY DUNN, DAVID CLARK
10   WADE FORSYTHE,                          AND WADE FORSYTHE'S MOTION
                                             FOR SUMMARY JUDGMENT
11       Defendants.

12

13

14       BEFORE THE COURT is Defendants Benton County, Timothy Dunn, David

15   Clark and Wade Forsythe's Motion For Summary Judgment.  (Ct. Rec. 28).  **Rea L.**

16   **Culwell**, Deputy Prosecuting Attorney for Benton County, represents the Defendants.

17   **Stewart R. Smith** represents the Plaintiff.

18                               INTRODUCTION

19       On February 24, 2006, Plaintiff Richard Robbins ("Robbins") filed an Amended

20   Complaint ("Complaint") against Defendants Yakima County, Benton County, and

21   Benton County Jail Officers Timothy Dunn, David Clark, and Wade Forsythe.  (Ct. Rec.

22   21).  In the Complaint, Robbins makes claims for false arrest, false imprisonment,

23   negligence, and violations of his constitutional rights pursuant to 42 U.S.C. § 1983.  On

24   June 13, 2006, the Defendants Benton County, Timothy Dunn, David Clark, and Wade

25   Forsythe ("Defendants") filed the present motion.  Yakima County is not included in this

26   motion.  Defendants' motion seeks to have all the claims against them dismissed.

27   Robbins objects to the motion in its entirety and argues that issues of fact exist as to all

28   claims.

     ORDER - 1

## SUMMARY JUDGMENT STANDARD

The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the material facts before the court. *Northwest Motorcycle Ass'n v. United States Dept. of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994). The moving party is entitled to summary judgment when, viewing the evidence and the inferences arising therefrom in the light most favorable to the nonmoving party, there are no genuine issues of material fact in dispute. Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). While the moving party does not have to disprove matters on which the opponent will bear the burden of proof at trial, they nonetheless bear the burden of producing evidence that negates an essential element of the opposing party's claim and the ultimate burden of persuading the court that no genuine issue of material fact exists. *Nissan Fire & Marine Ins. Co. v. Fritz Companies*, 210 F.3d 1099, 1102 (9th Cir. 2000).

Once the moving party has carried its burden, the opponent must do more than simply show there is some metaphysical doubt as to the material facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1975). Rather, the opposing party must come forward with specific facts showing that there is a genuine issue for trial. *Id.*

## FACTUAL BACKGROUND

As the Defendants are the parties moving for summary judgment, the evidence and inferences therefrom are viewed in the light most favorable to Robbins. The facts are undisputed except where otherwise stated.

On January 8, 2004, Robbins failed to appear for a hearing on a criminal case in Yakima County Superior Court. As a result, on that same day, a Yakima County Superior Court judge issued an order directing the issuance of a bench warrant for Robbins' arrest. (Pltf. St. Facts ¶ 1; Dfts. Exh. 4). The following day, January 9, 2004, Robbins appeared before the Yakima County Superior Court, (Robbins Decl. ¶ 3), and was thereafter detained. (Dfts. St. Fact, Ct. Rec. 30, pg. 1, ll. 25). On that same date, the Yakima County Superior Court issued an Order quashing "the Bench Warrant previously

ORDER - 2

issued on [January 8, 2004]."  (Pltf. St. Facts ¶ 2; Deft. Exh. 5).  According to Robbins,

he kept a copy of this January 9, 2006 Order in his backpack.  (Robbins Decl. ¶ 2).

While the Order directing the issuance of a bench warrant was issued on January 8, 2004,

it was not filed with the Yakima County Superior Court Clerk's office until  January 20,

2004.  (Dfts. Exh. 4).  On January 20, 2004, despite the January 9, 2004 Order quashing

the January 8, 2004 Bench Warrant, the Clerk issued the Failure To Appear Bench

Warrant for "failing to appear for Omnibus on January 8, 2004" for charges of "second

degree theft."  (Dfts. Exh. 6).

Meanwhile, also on January 20, 2004, Robbins appeared before the Yakima

County Superior Court and plead guilty to the charge of second degree theft, and a felony

Judgment and Sentence was entered.  (Pltf. St. Fact ¶ 3; Dfts. Exh. 7).  After his guilty

plea in Yakima County Superior Court, Robbins was transported to Benton County Jail

pursuant to a warrant for his arrest issued by Benton County District Court on January 12,

2004, for the charge of driving while license suspended in the second degree.  (Pltf. St.

Fact ¶ 3; Dfts. Exh. 10).  Three days later, on January 23, 2004, Robbins plead guilty to

that charge and a no custody sentence was imposed.  (Robbins Decl. ¶ 7; Dfts. St. Fact,

Ct. Rec. 30, pg. 3, ll. 4-5).  However, Robbins was not released from Benton County Jail.

(Dfts. St. Fact, Ct. Rec. 30, pg. 3, ll. 6-7).  Instead, Robbins was held on the bench

warrant erroneously issued by the Yakima County Superior Court Clerk on January 20,

2004.  (Dfts. St. Fact, Ct. Rec. 30, pg. 3, ll. 7-9).

According to the Declaration of Rob Guerrero, a Lieutenant with the Benton

County Sheriff's Office, Bureau of Corrections, it was the policy and practice of the

Bureau to run a computer check, including searching the Washington State Crime

Information Center and the National Crime Information Center, on every detainee prior to

release from custody.  (Dfts. Exh. 3, Guerrero Decl. ¶ 2).  Such a search was performed

for Robbins on January 23, 2004, and it revealed the warrant issued by the Yakima

County Superior Court Clerk on January 20, 2004.  (Dfts. St. Fact, Ct. Rec. 30, pg. 3, ll.

15-19).  When a warrant or other alert appears on an individual, such as Robbins in this

ORDER - 3

case, it was Benton County's policy to confirm that information by requesting a copy of the warrant, (Guerrero Decl. ¶ 4), and in this case, the Yakima Police Department faxed a copy of the warrant to the Benton County Jail.  (Dfts. Exh. 11).

According to Robbins, once he learned that he would be detained on the Yakima County warrant, he told jail Officers David Clark and Wade Forsythe that he had paperwork with his possessions that would show that the warrant had been quashed. Robbins claims that Officer Forsythe responded that, "It's not our problem; this is Yakima County's problem," and Officer Clark said that there was nothing he could do. (Robbins Decl. ¶ 10).  Then, according to Robbins' Declaration, at approximately 3:00 p.m., he attempted to telephone his attorneys in Yakima County to have the matter resolved, but the jail-issued telephone access Personal Identification Number ("PIN") did not work.  (Robbins Decl. ¶ 11).  Robbins claims he informed Officers Forsythe and Clark of the problem, but it was not remedied until after 5:00 p.m. when his attorneys' office at the Yakima County Department of Assigned Counsel had closed for the weekend.  (Robbins Decl. ¶ 12).  According to Defendant Timothy Dunn, a corporal with the Benton County Sheriff's Department, the process for reentering the PIN to correct such a problem is a simple procedure, which can ordinarily be completed within twenty minutes.  (Dunn Dep., pg. 10, ll. 19-21).

The next day, Saturday, January 24, 2004, Robbins claims he pled with Defendant Dunn until he agreed to inspect the Order quashing the warrant that was in Robbins' backpack, to which Dunn reacted, "It looks like you are right, but it's not our problem." (Robbins Decl. ¶ 13).  Then, Dunn allegedly refused to allow Robbins to present the Order to a judge.  (Robbins Decl. ¶ 14).

On Tuesday, January 27, 2004, Benton County was served with a formal copy of Yakima County's January 20, 2004 Bench Warrant, (Dfts. Exh. 8), and Robbins was transported to Yakima County jail.  (Pltf. St. Fact ¶ 12).  Upon arriving at the Yakima County jail later on January 27, 2004, Robbins claims to have explained to the jail staff that he was being held unlawfully.  The Yakima County Superior Court filed a Motion

ORDER - 4

1    And Order Quashing Warrant/Bench Warrant, (Dfts. Exh. 9), and Robbins was released,

2    (Pltf. St. Fact ¶ 12), four days after being detained on a bench warrant that was

3    erroneously issued by the Yakima County Superior Court Clerk.

4                                              DISCUSSION

5          Although Robbins' state tort-law and his section 1983 claims raise overlapping

6    issues, this court will handle each claim separately.  *See, e.g., Baker v. McCollan*, 443

7    U.S. 137, 142-47 (1979) (distinguishing between tort liability for false imprisonment and

8    section 1983 liability).

9    **I.  State-Law Tort Claims**

10         In his Amended Complaint, Robbins makes claims of negligence, false arrest, and

11   false imprisonment against the individually named Defendants and Benton County

12   through a theory of vicarious liability.  As the basis for his negligence claim, Robbins

13   alleges that the individual Defendants breached their duty owed "to Robbins to not arrest,

14   restrain, or imprison him without legal authority," (Ct. Rec. 21), and breached their duties

15   of ordinary care when they failed to quickly reissue Robbins' malfunctioning phone

16   access number.  (Ct. Rec. 43).  In asserting his claims for false arrest and false

17   imprisonment, Robbins alleges that the individual Defendants "acted with actual or

18   pretended legal authority and unlawfully restrained or imprisoned Robbins."  (Ct. Rec.

19   21).

20         **A.  Negligence Claims**

21         Negligence is the failure to exercise reasonable or ordinary care.  *Beeson v.*

22   *Atlantic-Richfield Co.*, 88 Wash. 2d 499, 509 (1977).  Under Washington law, the

23   elements of negligence are  (1) the existence of a duty to the plaintiff, (2) breach of that

24   duty, and (3) injury to the plaintiff proximately caused by the breach.  *Sheikh v. Choe*,

25   156 Wash. 2d 441, 447-48 (2006);  *Stalter v. Washington*, 151 Wash. 2d 148, 155 (2002).

26   Whether or not the duty element exists is a question of law and "depends on mixed

27   considerations of logic, common sense, justice, policy, and precedent."  *Sheikh*, 156

28   Wash. 2d at 448; *Stalter*, 151 Wash. 2d at 155.  In this action, the duty element is

1  determinative.

2

3    In light of the facially valid warrant issued by Yakima County, the Benton County

4  jail officers were clearly under a duty to arrest Robbins.  Pursuant to RCW 36.28.010 the

5  county sheriff and his deputies "[s]hall execute all warrants . . . according to the

6  provisions of particular statutes."  Washington State courts have also recognized an

7  officer's duty to make an arrest upon learning of a warrant.  *See State v. Chelly*, 94 Wash.

8  App. 254, 262 (1999) (stating that "[o]nce an officer discovers the existence of an

9  outstanding warrant for a person's arrest, the officer has a duty to arrest") (citing *State v.*

10 *Mennegar*, 114 Wash. 2d 304, 314 (1990)).  Moreover, the United States Supreme Court

11 recognizes that law enforcement officers, magistrate judges, and judicial officers may

12 rely upon each other in the execution of a warrant.  *Baker*, 443 U.S. at 145-46.  Whether,

13 at some later point during Robbins detention, the officers had a duty to release Robbins is

14 a separate issue.

15    Under Washington caselaw, "jail personnel have the duty to take steps to promptly

16 release a detainee once they know or should know, based on information presented to

17 them, that there is no justification for holding the individual."  *Stalter*, 151 Wash. 2d at

18 157 (citing *Tufte v. City of Tacoma*, 71 Wash. 2d 866, 870 (1967)).  However, the

19 Washington State Supreme Court has refused to "impose an affirmative duty on jails to

20 investigate whenever jail personnel are put on notice that they may be holding a person

21 under a warrant erroneously."  *Stalter*, 151 Wash. 2d at 157.

22    To determine whether the Benton County Defendants had a duty as described by

23 the Washington State Supreme Court in *Stalter* and *Tufte*, this court must examine what

24 the Benton County officers knew or should have known concerning Robbins' legal status.

25 On Friday, January 23, 2004, after the computer background check revealed the Yakima

26 County bench warrant, Benton County jail officers contacted the Yakima Police

27 Department and received a faxed copy of the warrant, which showed that it had been

28 issued on January 20, 2004 at 12:33 p.m..  Robbins, however, continued to insist that the

ORDER - 6

warrant was invalid and had been quashed, claiming that he had documentary proof inside his backpack.  The following day, Saturday, January 24, 2004, Officer Dunn allegedly retrieved the contents of Robbins' backpack and inspected Robbins' copy of the Order Quashing Bench Warrant.  The Order Quashing Bench Warrant was issued on January 9, 2004 and states that it quashes "the Bench Warrant previously issued on 1/8/04."  (emphasis added).  The only indication that the Order might relate to the January 20, 2004 warrant, is the fact that the warrant states that it was issued for "failing to appear for Omnibus on January 8, 2004."  Without more, however, the Order appears to quash a different warrant, one issued on January 8, 2004, rather than one issued on January 20, 2004.  Therefore, on the information available to the Benton County officers, there was continued justification for holding Robbins.  Looking at all the evidence on the record in the light most favorable to Robbins, there is no reason the individual Defendants should have known that Robbins was being held unlawfully.

Finally, Robbins cites to no caselaw indicating that, under Washington law, jail officers have a duty to immediately remedy technical difficulties affecting a detainee's telephone access.  Moreover, Robbins' telephone access was restored within approximately two hours, a period of time he has not established as being unreasonable.

Because Robbins has failed to establish the duty element as a matter of law, his negligence claim fails and Defendants' motion for summary judgment as to this claim is **GRANTED**.

**B.  False Arrest and False Imprisonment Claims**

In an action for false arrest, the plaintiff must prove that he was unlawfully restrained or imprisoned by a person with actual or pretended legal authority. *Jacques v. Sharp*, 83 Wash. App. 532, 535 (1996) (citing *Bender v. Seattle*, 99 Wash.2d 582, 590-91 (1983)).  In an action for false imprisonment, the plaintiff must prove that the liberty of his person was intentionally restrained, *Moore v. Pay'n Save Corp.*, 20 Wash. App. 482, 486 (1978), although no actual or pretended legal authority is necessary for a restraint to constitute false imprisonment. *Bender*, 99 Wash.2d at 590.  "A person is restrained or

ORDER - 7

1   imprisoned when he is deprived of either liberty of movement or freedom to remain in the

2   place of his lawful choice; and such restraint or imprisonment may be accomplished by

3   physical force alone, or by threat of force, or by conduct reasonably implying that force

4   will be used." *Id.* at 591.

5        Washington's courts recognize the existence of probable cause as a complete

6   defense to an action for false arrest and imprisonment. *Hanson v. City of Snohomish*, 121

7   Wash.2d 552, 563 (1993). As described by the Washington State Supreme Court in

8   *Bender v. Seattle*, 99 Wash.2d 582, 591-92 (1983) (citations omitted):

9        [i]n an action for false arrest the general rule is that an officer is not liable if
10       he makes an arrest under a warrant or process which is valid on its face, even
         though there are facts within his knowledge which would render it void as a
11       matter of law . . . This rule serves to protect officers who execute warrants,
         because those officers generally are not in a position to fully know the
12       underlying facts giving rise to the issuance of the warrant. Certainly, we
13       should not require officers to question the authority of courts issuing such
         facially valid warrants.
14

15       However, in *Tufte v. City of Tacoma*, 71 Wash.2d 866, 870 (1967), the Washington

16  State Supreme Court pointed out that it is a "non sequitur" to argue that because the

17  initial arrest was lawful pursuant to probable cause, the subsequent imprisonment must

18  also be entirely lawful. The court recognized that "a lawful imprisonment following

19  proper arrest may under some circumstances become unlawful." *Id.* Once jailers know

20  or should know that confinement of the detainee is unwarranted, the jailers have a duty to

21  take steps to release the detainee. *Stalter*, 151 Wash.2d at 157 (citing *Tufte*, 71 Wash.2d

22  at 870).

23       It appears from the record, and is conceded by Robbins in his response, that the

24  bench warrant issued on January 20, 2004, by the Yakima County Superior Court Clerk

25  was facially valid and could be relied upon by the Benton County officers. Therefore, the

26  officers cannot be liable for the Robbins' "arrest." Whether Robbins' continued detention,

27  after his repeated insistence that the warrant had been quashed and his alleged production

28  of the January 9, 2004 Order, was unlawful is the contested issue. As described above,

ORDER - 8

however, the January 9, 2004 Order did not put the officers on notice that the warrant issued on January 20, 2004, had been quashed.  As such, the officers had probable cause to detain Robbins and nothing indicates that the Benton County officers should have known that Robbins confinement awaiting transfer to Yakima County was unlawful. Accordingly, Defendants'  motion for summary judgment as to the false arrest and false imprisonment claims is **GRANTED.**

### C.  Vicarious Liability – Benton County

Finally, because the individual Defendants did not act negligently nor commit intentional torts, Robbins' action against Benton County must fail as a matter of law.  *See Niece v. Elmview Group Home*, 131 Wash. 2d 39, 48 (1997) (stating that "[v]icarious liability, otherwise known as the doctrine of respondeat superior, imposes liability on an employer for the torts of an employee who is acting on the employer's behalf").

## II.  42 U.S.C. § 1983 Claims

Robbins also alleges general violations of his civil rights pursuant to 42 U.S.C. § 1983.  (Ct. Rec. 21).  Only after Robbins filed his Memorandum Of Law In Opposing Defendants' Motion For Summary Judgment, (Ct. Rec. 43), did it become clear that he alleges violations of his First, Fourth, Sixth, and Fourteenth Amendment rights.  The Defendants' argue in their motion for summary judgment that Robbins has no cognizable claims under 42 U.S.C. § 1983 because he never suffered a constitutional deprivation. *See Baker*, 443 U.S. at 140 (stating that "[t]he first inquiry in any § 1983 suit . . . is whether the plaintiff bas been deprived of a right 'secured by the Constitution and laws'") (quoting 42 U.S.C. § 1983);  *Allen v. Portland*, 73 F.3d 232, 235 (9th Cir. 1995)(stating that "[t]he critical inquiry in a § 1983 action is whether the plaintiff has been deprived of a right secured by the Constitution and laws") (citations and quotations omitted).  Thus, this court shall begin by determining whether the Defendants' conduct, as alleged by Robbins, deprived the Plaintiff of a right secured by the Constitution.

### A.  Fourth Amendment

It is undisputed that "[a]n arrest without probable cause violates the Fourth

ORDER - 9

1  Amendment and gives rise to a claim for damages under § 1983." *Lee v. City of Los*

2  *Angeles*, 250 F.3d 668, 684 (9th Cir. 2001) (quoting *Borunda v. Richmond*, 885 F.2d

3  1384, 1391 (9ᵗʰ Cir. 1988).  As recognized by the United States Supreme Court in *Baker*

4  *v. McCollan*, 443 U.S. 137, 142-43 (9th Cir. 1979) (quoting *Gerstein v. Pugh*, 420 U.S.

5  103 (1975)), "[b]y virtue of its "incorporation" into the Fourteenth Amendment, the

6  Fourth Amendment requires the States to provide a fair and reliable determination of

7  probable cause as a condition for any significant pretrial restraint of liberty," and "must

8  be made by a judicial officer either before or promptly after arrest."

9  Robbins recognizes that the Defendants detained him pursuant to a facially valid

10 warrant issued by the Yakima County Superior Court Clerk's office and therefore does

11 not challenge the constitutionality of the "arrest."  Instead, early in his Memorandum,

12 Robbins argues that the probable cause "lost its validity," citing to the portion of *Stalter*

13 *v. State of Washington*, 151 Wash. 2d 148, 157 (2004) where the court states that "jail

14 personnel have the duty to take steps to promptly release a detainee once they know or

15 should know, based on information presented to them, that there is no justification for

16 holding the individual."  This citation is misplaced, however, as it refers to claims of

17 negligence and false imprisonment and not section 1983 claims.  Later in his

18 Memorandum, Robbins asserts that an arrest <u>or imprisonment</u> without probable cause

19 may violate the Fourth Amendment and give rise to section 1983 cause of action for

20 damages, citing to *McKenzie v. Lamb*, 738 F.2d 1005 (9th Cir. 1984) and *Gurno v. Town*

21 *of LaConner*, 65 Wash. App. 218, 226 (1992). Contrary to his assertions, however, the

22 section 1983 claims in these cases are limited to <u>arrest</u> without probable cause.

23 As Robbins concedes that his initial detention was pursuant to a warrant

24 conforming with the requirements of the Fourth Amendment, Robbins' section 1983

25 claim, based on his continued detention despite his continued protests that the warrant

26 had been quashed and his alleged production of a copy of the January 9, 2004 Order, is

27 properly phrased and addressed as a Fourteenth Amendment Due Process claim, rather

28 than as a Fourth Amendment claim.  *See Baker*, 443 U.S. at 144-45.

ORDER - 10

**B.  Fourteenth Amendment – Due Process**

The Due Process Clause of the Fourteenth Amendment protects against unlawful state deprivation of individual liberty without due process of law. *Lee*, 250 F.3d at 683; *Baker*, 443 U.S. at 145. It is generally recognized that an individual has a liberty interest in being free from prolonged incarceration absent a criminal conviction or due process. *Lee*, 250 F.3d at 683 (citing *Oviatt v. Pearce*, 954 F.2d 1470, 1474 (9th Cir. 1992). The leading case in the area of unlawful detention rising to the level of a constitutional violation, relied upon by the Defendants, is *Baker v. McCollan*, 443 U.S. 137 (1979).

In *Baker*, the Plaintiff's brother was arrested on narcotics charges and passed himself off as the Plaintiff. He presented a forged duplicate of the Plaintiff's driver's license to police, signed the Plaintiff's name to various booking and bail documents, and was released as the Plaintiff. *Id.* at 140-41. When the Plaintiff's brother absconded, a warrant was issued for the Plaintiff. *Id.* Pursuant to the warrant, the Plaintiff was arrested and held for three days despite protests of mistaken identity. *Id.* at 144-45. Ultimately, the court held that the detention of the wrong person over a three-day holiday weekend, pursuant to a facially valid warrant but in the face of continuing protests by the detainee that there was a misidentification was not a Fourteenth Amendment due process violation. *Id.* In so holding, the Court explained that "depending on what procedures the State affords defendants following arrest and prior to actual trial, mere detention pursuant to a valid warrant but in the face of repeated protests of innocence will after the lapse of a certain amount of time deprive the accused of 'liberty . . . without due process of law.'" *Id.* at 145. The *Baker* Court went on to emphasize that a due process violation had not occurred because

> [a] reasonable division of functions between law enforcement officers, committing magistrates, and judicial officers – all of whom may be potential defendants in a § 1983 action – is entirely consistent with "due process of law." Given the requirements that arrest be made only on probable cause and that one detained be accorded a speedy trial, we do not think a sheriff executing an arrest warrant is required by the Constitution to investigate independently every claim of innocence, whether the claim is based on

ORDER - 11

1
2
3

>mistaken identity or a defense such as lack of requisite intent. Nor is the official charged with maintaining custody of the accused named in the warrant required by the Constitution to perform an error-free investigation of such a claim.

4  *Id.* at 145-46.

5       The Ninth Circuit applied *Baker* in *Erdman v. Cochise County*, 926 F.2d 877, 882
6  (9th Cir. 1991), a case involving an arrestee detained for twelve days pursuant to a
7  facially valid warrant erroneously issued based on charges that had already been
8  adjudicated.  The court held that *Baker* foreclosed the Plaintiff's due process claims
9  because the Plaintiff's incarceration "seems to have been an isolated incident caused by
10  simple negligence, which does not establish liability under 42 U.S.C. § 1983." *Id.*  The
11  Plaintiff's "deprivation, if any, was caused by the unfortunate and inadvertent lack of
12  communication between the City Magistrate, the County Attorney, and the Sheriff." *Id.*
13  Furthermore, the Plaintiff had presented no evidence that an officer acted with "deliberate
14  indifference" or "callous disregard" of his due process rights to survive the Defendant's
15  motion for summary judgment.

16       While the "the loss of liberty caused by an individual's mistaken incarceration
17  'after a lapse of a certain amount of time'" *may* give rise to a claim under the Due Process
18  Clause, *Lee*, 250 F.3d at 683 (emphasis added), Benton County's detention of Robbins,
19  lasting from Friday until Tuesday, does not rise to the level of a constitutional
20  deprivation, as his detention was considerably shorter than the twelve days permitted by
21  the Ninth Circuit in *Erdman*.  Moreover, as in *Erdman*, Robbins has not alleged that the
22  Defendants acted with "deliberate indifference" or "callous disregard" for his due process
23  rights.  Benton County simply held Robbins until he could be transferred to Yakima
24  County.  Because the officers were acting pursuant to a facially valid warrant and the
25  detention, being approximately five days, was not unduly long, Robbins treatment by
26  Benton County does not constitute a due process violation.  In fact, on that Tuesday, he
27  was transferred to Yakima County where the erroneously issued warrant was quashed and
28  he was released.  Defendants' motion as to the Fourteenth Amendment claim is

ORDER - 12

**GRANTED**.

### C.  First and Sixth Amendment

Robbins alleges that the Defendants violated his  First Amendment right to free speech and his Sixth Amendment right to the assistance of counsel when the Defendants failed to promptly reissue a telephone access PIN after he informed the officers that the original PIN was not working.  To support his argument that this alleged conduct resulted in a free speech violation, Robbins cites *Strandberg v. City of Helena*, 791 F.2d 744, 747 (9th Cir. 1986) for the proposition that inmates have a constitutional right to access a telephone during detention.  While this right is well recognized, it is not unqualified.  *Id.* (holding that an inmate's right to communication is subject to rational limitations in the face of legitimate security interests and if the limitations on access are reasonable, there is no First Amendment violation) (citations omitted); *see also McMaster v. Pung*, 984 F.2d 948, 952 (8th Cir. 1993) (holding that prison officials may restrict inmate's telephone privileges in reasonable manner); *Benzel v. Grammar*, 869 F.2d 1105, 1108 (8th Cir. 1989) (stating that "a prisoner has no right to unlimited telephone use").  The other case cited by Robbins, *Haynes v. State of Washington*, 373 U.S. 503 (1963) is inapposite and distinguishable.  In *Haynes*, the police held a detainee without  telephone access for a 16-hour period, until he agreed to sign a confession to a charge of robbery.  The United States Supreme Court held that this type of egregious conduct amounted to a violation of the detainee's constitutional rights, although this type of behavior is nowhere present in Robbins' allegations.

To support his Sixth Amendment claim, Robbins makes a general citation to *Gideon v. Wainwright*, 372 U.S. 335 (1963), which established that access to counsel is an essential element of a defendant's right to a fair trial and is applicable to the states through the Due Process Clause of the Fourteenth Amendment.  While the Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the assistance of counsel for his defense," a detainee's right to counsel is not absolute and does not attach immediately upon detention.  *Texas v. Cobb*, 532 U.S. 162,

1    167-68 (2001) (citations omitted) (stating that the right does not attach until a prosecution

2    is commenced, or after the initiation of adversary judicial criminal proceedings by formal

3    charge, preliminary hearing, indictment, information, or arraignment).

4          The Benton County Defendants' alleged conduct surrounding Robbins' inability to

5    immediately place a call to his attorneys does not rise to a constitutional violation.  On

6    this day, replacing Robbins' telephone access PIN, a process which ordinarily takes

7    twenty minutes, took jail staff over two hours.  As a result, Robbins was unable to

8    successfully place a call until after 5:00 p.m., at which point Robbins' attorneys' office

9    had closed for the weekend.  Robbins was unable to contact his attorneys' office over the

10   weekend, although Robbins has presented no evidence that he called his attorney on

11   Monday.  Robbins has not presented any evidence that Defendants wrongfully denied

12   him telephone access, access to his attorney, or that it was unreasonable for the Benton

13   County jail to take more than twenty minutes to replace the PIN on some days.  Given

14   Robbins' failure to cite to any compelling authority that Defendants' actions amounted to

15   a violation of his First or Sixth Amendment rights, the Defendants' motion for summary

16   judgment as to these claims is **GRANTED**.

17        **D.  Qualified Immunity For Individually Named Defendants**

18         Qualified immunity shields government officials "from liability for civil damages

19   insofar as their conduct does not violate clearly established statutory or constitutional

20   rights of which a reasonable person would have known." *Wilson v. Layne*, 526 U.S. 603,

21   609 (1999) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  Under *Saucier v.*

22   *Katz*, 533 U.S. 194 (2001), courts must take a two-step approach to qualified immunity in

23   a section 1983 claim.  *Kennedy v. City of Ridgefield*, 439 F.3d 1055, 1060-61 (9th Cir.

24   2006); *see also Menotti v. City of Seattle*, 409 F.3d 1113, 1152 (9th Cir. 2005)

25   (recognizing the two-step approach).  In its initial inquiry, the court "must determine

26   whether – resolving all disputes of fact and credibility in favor of the party asserting the

27   injury – the facts adduced at summary judgment show that the officer's conduct violated

28   a constitutional right." *Kennedy*, 439 F.3d 1055, 1060-61 (9th Cir. 2006) (citing *Saucier*,

533 U.S. at 200-01).  If the court determines that "no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." *Saucier*, 533 U.S. at 201.  If a constitutional violation is established on the alleged facts, the court's second step is to determine whether that right was "clearly established." *Kennedy*, 439 F.3d at 1060-61.

As this court has already determined that the facts alleged by Robbins fail to state a constitutional deprivation, this court need not continue with its *Saucier* analysis, as the Defendants are also entitled to qualified immunity.

SUMMARY OF CONCLUSIONS

1. Defendants Benton County, Dunn, Clarke, and Forsythes' motion for summary judgment regarding Plaintiff's negligence claims is **GRANTED**.

2. Those Defendants' motion for summary judgment regarding Plaintiff's false arrest claim is **GRANTED**.

3. Those Defendants' motion for summary judgment regarding Plaintiff's false imprisonment claim is **GRANTED**.

4. Those Defendants' motion for summary judgment regarding Plaintiff's section 1983 claims is **GRANTED.**

5. Those Defendants' motion for summary judgment based on qualified immunity is **GRANTED.**

**IT IS SO ORDERED.**  The Clerk of this court shall enter this Order and forward copies to counsel.

**DATED** this 20th day of July 2006.

                         s/ Justin L. Quackenbush

                    JUSTIN L. QUACKENBUSH
              SENIOR UNITED STATES DISTRICT JUDGE

ORDER - 15